UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PATRICK BISHOP, SR.,** | ) |
| Plaintiff, | ) |
| v. | )  Case No.: 2:23-cv-1048-AMM |
| **CITY OF LEEDS,** | ) |
| Defendant. | ) |

## ORDER

This case comes before the court on a motion to dismiss filed by Defendant City of Leeds ("the City"). Doc. 4. For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART.**

I.   BACKGROUND

Viewed in the light most favorable to Plaintiff Patrick Bishop, Sr., the complaint alleges as follows:

"[Mr. Bishop] is a fifty-one (51) year[-]old, African American male." Doc. 1 ¶ 11. "[Mr. Bishop] began employment with the City of Leeds Police Department on or around June 22, 2021 as a police officer." *Id*. ¶ 13. "On June 29, 2021, [Mr. Bishop] was sworn in as a police officer by Chief Jim Atkinson." *Id*. ¶ 14. "From June 29, 2021 through July 1, 2021, [Mr. Bishop] worked three shifts on duty as a police officer for the City of Leeds. During one shift, [Mr. Bishop] executed a search

warrant on a rape suspect in Alabaster, Alabama." *Id*. ¶ 15. "On July 1, 2021, [Mr. Bishop] was instructed by the City of Leeds to not return to work. This came after [Mr. Bishop] provided a copy of his driver's license (showing his picture and race) to a staff member of the City of Leeds Mayor, David Miller, a white male." *Id*. ¶ 16. "After [Mr. Bishop] provided a copy of his license and was instructed to not return, the City of Leeds immediately hired Officer Jacob Turnbloom, a white male." *Id*. ¶ 17. "Officer Turnbloom has an extensive disciplinary history as a police officer." *Id*. "The [City] has a habit and/or practice of allowing and condoning discrimination based on race." *Id*. ¶ 20.

Mr. Bishop filed this action on August 9, 2023. His complaint contains two counts. Count One asserts that Mr. Bishop "has been discriminated and retaliated against because of his race," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). *Id*. ¶ 23. Count Two asserts that Mr. Bishop "has been discriminated against based on his race . . . in violation of 42 U.S.C. § 1981" and that "[b]y and through their conduct as described herein and acting under color of state law the [City] is liable for violations of 42 U.S.C. § 1983." *Id*. ¶¶ 37–38.

The City filed a motion to dismiss. Doc. 4. Mr. Bishop filed a response. Doc. 7. The City did not reply.

II.   **LEGAL STANDARD**

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the facts alleged in a complaint must do more than "speculat[e]" or raise "suspicion" about a claim for relief. *Id*. (cleaned up). A complaint is tested by taking all factual allegations as true, discarding any "conclusory allegations," *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018), and "draw[ing] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Allegations are conclusory when they "amount to nothing more than a 'formulaic recitation of the elements' of a . . . claim." *Id*. at 681 (quoting *Twombly*, 550 U.S. at 555). Further, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678.

## III. DISCUSSION

### A. Shotgun Complaint

The City argues that Mr. Bishop's "Complaint is a textbook shotgun pleading" that is "due to be dismissed." Doc. 5 at 10–11. Specifically, the City argues that the complaint "consists of unsupported statements, conclusions, scant factual detail, allegations not showing a constitutional violation, and initial paragraphs of each count incorporating all preceding allegations." *Id*. at 10.

"A district court has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up). A shotgun complaint is a complaint that "violate[s] either [Federal Civil Procedure] Rule 8(a)(2) or Rule 10(b), or both." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). That is, a shotgun complaint "fail[s] to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323; *see also Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) ("[A] [shotgun] pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they

4

do so."). The Eleventh Circuit has identified as a category of shotgun complaints "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321.

Mr. Bishop's complaint is not an impermissible shotgun complaint. Mr. Bishop's complaint is not one where the last count is "a combination of the entire complaint." *Id*. Count Two does not adopt the allegations of Count One, even if the allegations are substantially similar. *See* Doc. 1 at 5–9. The complaint also alleges with sufficient clarity that the City discharged Mr. Bishop after he provided a copy of his driver's license to a staff member of the Mayor's office and that the City hired a white male officer with an extensive disciplinary history instead. The court understands Mr. Bishop to seek relief under Title VII (Count One) and Section 1981 and Section 1983 (Count Two) based on these factual allegations. The City's motion to dismiss Mr. Bishop's complaint as an impermissible shotgun complaint is **DENIED**.

### B. Failure To State a Claim

The City makes four arguments that Mr. Bishop's complaint fails to state a claim. First, the City argues that Mr. Bishop's complaint "makes mere conclusions of discrimination and (possibly) retaliation." Doc. 5 at 12. Second, the City argues

that Mr. Bishop's Section 1983 and Section 1981 claims "fail to allege facts necessary to place liability on a municipality." *Id*. at 13 (cleaned up). Third, the City argues that the complaint "fails to allege an adverse employment action," *id*. at 14 (cleaned up), asserting that "because [Mr. Bishop] was not officially hired, he was not entitled to any real benefits or privileges of the job, and consequently, could not have been adversely impacted when he was told not to return to work," *id*. at 17. Fourth, the City argues that the complaint "fails to identify substantially similar comparators" necessary to establish a *prima facie* case of discrimination under *McDonnell Douglas*. *Id*. at 17–18 (cleaned up).

Mr. Bishop responds that he has "alleged that he suffered adverse employment actions in the form of a dismissal" and that "a white Police Officer with a disciplinary record, Jacob Turnbloom, was hired immediately after [he] was dismissed." Doc. 7 at 4. According to Mr. Bishop, "[i]t is not incumbent upon [him] . . . to prove each element of a race discrimination at this stage." *Id*. Mr. Bishop does not cite any case law nor make any arguments specific to his retaliation claim, Section 1983 claim, or Section 1981 claim. *See* Doc. 7.

### 1. Retaliation Under Title VII

Viewing the complaint in the light most favorable to Mr. Bishop, the court construes the retaliation claim as one asserted under Title VII. *See* Doc. 1 ¶ 23 (alleging that Mr. Bishop "has been discriminated and retaliated against because of

his race"). Count Two, which asserts claims under Section 1981 and Section 1983, refers only to discrimination. *See* Doc. 1 ¶¶ 35–49. The complaint does not allege— and Mr. Bishop does not argue—retaliation under Section 1981 or Section 1983.

"To establish a claim of retaliation, [the plaintiff] must prove that [he] engaged in statutorily protected activity, that [he] suffered an adverse action, and that the adverse action was causally related to the protected activity." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). "Title VII's anti-retaliation provision . . . makes it unlawful for an employer to discriminate against any of his employees . . . because the employee has opposed any unlawful employment practice, or because of participation in a Title VII investigation or hearing." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (cleaned up).

But Mr. Bishop's complaint contains nothing more than the conclusory statement that he was "retaliated against because of his race." Doc. 1 ¶ 23. It does not allege any facts to allow the inference that Mr. Bishop opposed an unlawful employment practice or participated in a Title VII investigation or hearing, and that he suffered an adverse action as a result. *See id*. ¶¶ 11–21. Accordingly, the City's motion to dismiss Mr. Bishop's retaliation claim is **GRANTED**.

### 2. Section 1981 and Section 1983

When a plaintiff asserts a Section 1983 claim, "[a] municipality may not be held liable for the torts of its employees on a *respondeat superior* theory." *Lewis v.*

*City of Union City*, 934 F.3d 1169, 1190 (11th Cir. 2019). A plaintiff can establish municipal liability under Section 1983 by: "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's . . . rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022). "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Id.* at 1230 (cleaned up). The Eleventh Circuit has described "the bar to establish municipal liability" as "very high." *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018).

Mr. Bishop asserts claims under both Section 1981 and Section 1983 in Count Two. Count Two alleges that the City violated "42 U.S.C. § 1983 which prohibits the deprivations, under color of state law, of rights secured under the United States Constitution." Doc. 1 ¶ 38. The complaint does not specify what those rights are. *See id*. ¶¶ 35–49. But the allegation that the City violated Section 1983 immediately follows the allegation that Mr. Bishop has been discriminated against based on his race, in violation of Section 1981. *See id*. ¶¶ 37–38. Viewing the complaint in the light most favorable to Mr. Bishop, the court construes the Section 1983 claim to allege, at a minimum, a violation of Section 1981.

But "[Section] 1983 contains the sole cause of action against state actors for violations of [Section] 1981." *Butts v. Cnty. of Volusia*, 222 F.3d 891, 892 (11th Cir. 2000). Thus, requirements for municipal liability under Section 1983 apply also to Section 1981 claims. *See, e.g., Posey v. Atlanta Pub. Schs.*, No. 1:23-cv-341-MLB, 2024 WL 1223474, at *11 (N.D. Ga., Mar. 21, 2024).

The complaint does not allege facts sufficient to state a plausible claim for municipal liability under Section 1983. The complaint does not identify "an official policy" of the City or "an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law" for the City. *Chabad Chayil*, 48 F.4th at 1229. The complaint alleges only that the City "has a habit and/or practice of allowing and condoning discrimination based on race against its employees," Doc. 1 ¶ 43, which is a conclusory statement insufficient to survive a motion to dismiss.

The complaint likewise does not identify "a municipal official with final policymaking authority whose decision violated" Mr. Bishop's rights. *Chabad Chayil*, 48 F.4th at 1229. The complaint alleges only that Mr. Bishop was "wrongfully removed from his position after the City of Leeds Mayor, a white male, discovered that [he] was African American." Doc. 1 ¶ 39. Assuming *arguendo* that it was reasonable to infer from this allegation that the Mayor made the decision to discharge Mr. Bishop, the complaint makes no allegation that the Mayor's decision

was not subject to any meaningful administrative review. Accordingly, the complaint does not state a plausible claim for relief against the City under Section 1981 and Section 1983, and the City's motion to dismiss those claims is **GRANTED**.

### 3. Discrimination under Title VII

The complaint alleges sufficient facts to state a plausible claim of discrimination under Title VII. The court takes as true—as it must on a motion to dismiss—Mr. Bishop's allegation that he "began employment with the City of Leeds Police Department on or around June 22, 2021 as a police officer" and that he "was sworn in as a police officer" on June 29, 2021. Doc. 1 ¶¶ 13–14. The court also takes as true Mr. Bishop's allegation that he was "instructed . . . to not return to work" on July 1, 2021. *Id*. ¶ 16. These allegations allow a reasonable inference that Mr. Bishop was discharged from employment on July 1, 2021. Because the court must assume the truth of these facts and inferences on a motion to dismiss, the city's argument that Mr. Bishop was "not officially hired" and "could not have been adversely impacted when he was told not to return to work" fails as grounds to dismiss Mr. Bishop's Title VII discrimination claim. Doc. 5 at 17.

The City's argument that the complaint must be dismissed for failure to "sufficiently plead that [Mr. Bishop] was treated differently than similarly situated comparators outside his class" also fails. *Id*. A plaintiff may establish a *prima facie*

case of discrimination under Title VII by showing that "he was replaced by a person outside his protected class *or* was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (emphasis added). The complaint alleges that immediately after Mr. Bishop was discharged, a "white male" officer with "an extensive disciplinary history as a police officer" was hired. Doc. 1 ¶ 17.

"[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *accord Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018) ("Although [the] complaint would not have established a *prima facie* case under *McDonnell Douglas*, [the plaintiff] alleged facts adequate to raise her right to relief above a speculative level. This was all that was required at the pleading stage."). Even after surviving a motion to dismiss, "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case" because a "plaintiff will always survive summary judgment if he presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis*, 934 F.3d at 1185 (cleaned up). Accordingly, the City's motion to dismiss Mr. Bishop's discrimination claim under Title VII is **DENIED**.

### C. Request To Amend

At the end of his response to the City's motion to dismiss, Mr. Bishop requested leave to file an amended complaint "should this [c]ourt find that any of [his] claims are not sufficiently pled." Doc. 7 at 5. "A plaintiff who moves for leave to amend a complaint must either attach a copy of the proposed amendment to the motion or set forth the substance thereof." *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1363 (11th Cir. 2023) (cleaned up). "A request for leave, when not set out in a motion for leave, still must comply with this requirement." *Id*. Mr. Bishop has not attached a copy of proposed amendments or set forth the substance of the amendments. Mr. Bishop's request to amend the complaint is **DENIED WITHOUT PREJUDICE** to his opportunity to file a compliant motion to amend.

## IV. CONCLUSION

For the reasons explained above, the City's motion to dismiss Mr. Bishop's retaliation claim, Section 1981 claim, and Section 1983 claim is **GRANTED**. The motion to dismiss Mr. Bishop's discrimination claim under Title VII is **DENIED**.

**DONE** and **ORDERED** this 4th day of June, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE